**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONALD DEAN & SONS, INC.,**

                      **Plaintiff,**

      **vs.**                                    **3:08-CV-155**

**XONITEK SYSTEMS CORPORATION,**
**XONITEK CORPORATION, and PARIS**
**CONSULTING GROUP INTERNATIONAL LLC,**

                      **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.      INTRODUCTION**

       Plaintiff commenced this diversity action on February 11, 2008 alleging claims of

breach of contract, negligent misrepresentation, unjust enrichment, breach of the

covenant of good faith and fair dealing, and economic duress against Defendants

XONITEK SYSTEMS CORPORATION ("SYSTEMS") and XONITEK CORPORATION ("X-

CORP"). See generally Compl. dkt. # 1.  Plaintiff's claims arise from Defendants'

"development, marketing, selling, and provision of consulting services concerning

computer software systems or programing" for Plaintiff's business. Id. ¶ 9.  Plaintiff

contends that the services provided and paid for were faulty and ineffective, thereby

causing Plaintiff to incur damages including the loss of business. See generally id.

       Defendant X-CORP filed an Answer on March 24, 2008, see Ans. dkt. # 5, but

1

Defendant SYSTEMS did not answer and a default was entered against it by the Clerk of the Court on May 21, 2008.  See Entry of Default, dkt. # 11.  On September 23, 2008, the Court issued a Default Judgment as to liability against SYSTEMS, leaving for later determination the amount of damages.  See 9/23/08 Dec. & Ord., dkt. # 16.

On November 18, 2008, pursuant to the parties' stipulation that was "So Ordered" by the Hon. David E. Peebles, U.S. Magistrate Judge, Plaintiff filed an Amended Complaint. See Am. Compl.. dkt # 21; Stip., dkt. # 26.  The Amended Complaint adds Defendant PARIS CONSULTING GROUP INTERNATIONAL LLC ("PCGI"), and asserts, in addition to the claims in the Complaint, claims sounding in fraudulent conveyance, successorship liability, and alter ego liability. See generally Am. Compl.

Defendants X-CORP and PCGI now move for summary judgment seeking to dismiss various claims pursuant to Fed. R. Civ. P. 56.  See Motion, dkt. # 27.  Plaintiff opposes the motion.

## II.    FACTS[1]

Plaintiff is a corporation engaged in the assembly, production, manufacture and sale of wood products, including custom cabinet doors and drawer fronts.  In the spring of 2001, Plaintiff decided to invest in an information technology ("IT") management system to aid its business operations.  Plaintiff sought a system that would be able to, among other things, account for and efficiently manage its inventory, orders, production, sales and expenses, and related business and financial needs.  SYSTEMS was a corporation formed in 1985 that was engaged in the business of providing consulting, programing, and

---

[1]Unless indicated otherwise, the facts set forth in the text are not in dispute.

services for IT systems. Def. Statement of Material Facts Pursuant to Local Rule 7.1(a)(3) ("Def. SMF"), ¶ 3.[2]  Plaintiff contacted SYSTEMS to set up a meeting to consult about the implementation of an IT software system for its business.  Unknown to Plaintiff at the time, SYSTEMS did not have any employees of its own. Pl. Additional Undisputed Facts Pursuant to Local Rule 7(a)(3) ("Pl. Facts"), ¶ 42.

In late 2001, Plaintiff met with Joseph Paris, the owner and sole principle of SYSTEMS, see Def. SMF ¶ 2,[3] and with employees of PCGI, to inquire about the installation of the IT system that Plaintiff desired.  PCGI is a corporation formed in 1992 of which Paris is the sole principle and owner. Id.   PCGI and SYSTEMS "share the same location and place of business." Pl. Facts ¶ 52.  Since its formation, PCGI "has primarily engaged in the business of consulting customers with respect to information technology systems."  Def. SMF ¶ 3.  Plaintiff contends that it was unaware that the individuals that it was meeting with were PCGI employees, and that when it met with these individuals they held themselves out "as representatives of" SYSTEMS.  Am. Compl. ¶ 10.  Based on

---

[2]The Court cites only to Def. SMF when Plaintiff admits the allegation asserted in the cited paragraph.

[3]In Def. SMF, it is asserted that "Joseph Paris is the sole principal and owner of  ... SYSTEMS, ... X-CORP, and ... PCGI."  Id. ¶2.  This factual assertion is supported by a citation to Paris' February 11, 2009 affidavit wherein he asserts: "I am the owner and sole principal of [X-CORP], and [PCGI], and was owner of the now dissolved [SYSTEMS]." Paris Aff. ¶ 1. He uses the singular tense of "owner" when referring to SYSTEMS.

However, Paris submits a Reply Affidavit wherein he contends that "[t]here were three principals who owned SYSTEMS, (myself, Steven Costly and John Rozmer). I am the sole owner of X-CORP and PCGI." Paris Reply Aff. ¶ 7.   The Court does not credit this contradictory factual assertion on this motion for summary judgment. See Cordell v. Verizon Communications, Inc., 2009 WL 1532267, at * 1 (2d Cir. June 03, 2009)(summary order)(not crediting allegations in an affidavit that contradict prior deposition testimony); Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony.").

representations that SYSTEMS could implant a fully functional IT software package that would be customized to accommodate Plaintiff's needs and requirements, and that the individuals who would do the installation possessed the unique and specialized expertise to accomplish the installation, Pl. Facts ¶ 43, Plaintiff selected SYSTEMS as the vendor for the goods and services for its IT system installation project.

On November 21, 2001, Plaintiff entered a written agreement with SYSTEMS through which SYSTEMS agreed to provide programming and consulting services to Plaintiff in connection with the installation of an IT system referred to as a Macola IT system. Def. SMF ¶ 6.  Paris promised to install the Macola IT system, including material and labor, at a cost not to exceed $240,312.30. Pl. Facts ¶ 45.  Paris also promised that there would be no additional charges for: (1) milage and other related expenses by SYSTEMS' representatives; (2) integration services for the hardware to be installed; and (3) "installation of the hardware such that the delivered result [would be] an operational entity, with all interoperabilities established." Id. ¶ 44.   At the same time, Plaintiff executed a Support Agreement under which SYSTEMS agreed to provide additional technical support and consulting services for a one year period through December 31, 2002. Def. SMF  ¶ 7.  There is no dispute that all services for the Macola IT system installation were performed by employees of PCGI although SYSTEMS never disclosed to Plaintiff that the individuals performing such services were PCGI employees. Pl. Facts ¶ ¶ 46-48.  There is also no dispute that PCGI had no written sales representative or independent contractor agreements with SYSTEMS; that Plaintiff never received a bill for services directly from PCGI; and that Plaintiff never paid any monies directly to PCGI. Id.

Plaintiff contends that after several years of customization and technical support

4

efforts, SYSTEMS was not been able to meet Plaintiff's business requirements as originally planned.  Plaintiff further contends that:

> 31.    Despite these failures to deliver a fully functioning Macola IT system as originally promised, representatives of [PCGI] and/or [SYSTEMS] represented to Plaintiff on numerous occasions between 2001 and 2005 that the Macola IT system could be implemented with additional customization and technical support from said defendant(s).

> 32.    Due to the failure of [PCGI] and/or [SYSTEMS] to install a fully functioning Macola IT system as originally agreed, Plaintiff was forced to enter into a number of separate "support agreements" with [SYSTEMS] at considerable additional expense during the period 2002 through 2007.

Am. Compl. ¶¶ 31, 32.

Plaintiff asserts that it repeatedly entered these additional support agreements, and paid additional amounts above the agreed upon contract price, because representatives of SYSTEMS made threats to cease all work on installation and implementation of the Macola IT system "unless payments from Plaintiff continued." Id. ¶ 35.  While Plaintiff admits that it contacted Exact Corp., the company from which the Macola IT system originated, and was told that, for a fee, Exact Corp. could provide support services for a Macola IT system (or could recommend other companies that could provide such services), Plaintiff felt that it was under "duress" to stay with SYSTEMS because it "was indebted to SYSTEMS and relied on continued representations made by SYSTEMS/PCGI that they could properly implement the Macola IT system."  Pl. Facts at ¶19.

Because Plaintiff had fallen behind in its payment obligation to SYSTEMS,[4]  in November 2004 Plaintiff's "trade account debt was converted into a promissory note" in

---

[4](which Plaintiff contends was due to "Defendants' failure to properly install a fully functional Macola IT system as represented and promised."  Pl. Facts at ¶ 9)

the principle amount of $130,000.00. Def. SMF ¶¶ 10-11.  Plaintiff's satisfaction with the

Macola IT system did not improve, however, and in July 2005 Susan Dean, one of

Plaintiff's corporate officers, sent SYSTEMS an email in which she threaten to file a

lawsuit on Plaintiff's behalf "for SYSTEMS' failure to install a fully functioning Macola IT

system as promised and for the agreed upon price."  Dean Aff., ¶ 24.  Nonetheless, when

Plaintiff fell behind on its payments under the promissory note, Plaintiff executed a

judgement note in November of 2005 to redress the then-existing arrearage of

$115,500.00.  The judgment note contained a payment schedule and a confession of

judgment.

There is no dispute that Plaintiff paid all amounts billed by SYSTEMS arising from

the original contract, the subsequent support agreements, the 2004 promissory note, and

2005 judgment note.  Def. SMF ¶ 16.  Plaintiff contends that, "[i]n all, [it] paid [SYSTEMS]

more than $750,000.00 despite the fact that said defendant failed to ever deliver a fully

functioning Macola IT system as promised in the Agreement."  Am. Compl. ¶ 34.

Defendants assert that, "in June 2007," Paris decided to dissolve SYSTEMS and to

begin to "wind down" the operations of SYSTEMS in preparation to formal dissolution.

Def. SMF ¶ 22.  However, on June 6, 2007, PCGI and SYSTEMS commenced a civil

action in New York state court contending that a "former employee" breached a non-

compete covenant. Def. SMF ¶ 26.  It is unclear whether the defendant in the state action,

Dana S. Ellis, was a former employee of PCGI, of SYSTEMS, or both.[5]

---

[5]The Defendants have supplied only the Summons from the state action.  See Def. Ex. H.  However,
a letter from PCGI & SYSTEMS' counsel to Ellis' counsel dated July 28, 2008 (presented by Defendants in
support of the motion) tends to indicate that Ellis was a PCGI employee.  Def. Ex. J.  In the letter, counsel

(continued...)

On June 12, 2007, Corning Glass Corp. commenced a breach of contract action in New York state court against SYSTEMS. Id. ¶ 27.  Corning Glass Corp. sought in excess of $700,000.00 "in connection with a Macola IT system." Am. Compl. ¶ 43.

On June 26, 2007, Paris formed X-CORP, a  corporation "in the business of consulting its customers with respect to information technology issues as well as management and administrative projects." Def. SMF ¶ 5.  Paris is the sole principal and owner of X-CORP.  Id. ¶ 2.  Paris asserts that he formed X-CORP "[c]oncurrent with the decision to wind down the operations of SYSTEMS, . . . intending to concentrate its operations within the realm of consulting." Id. ¶ 23; Pl. Resp. to Def. SMF ¶ 23.   X-CORP shares "the same location and place of business" as SYSTEMS and PCGI.  Pl. Facts, ¶ 52

In May 2008, Corning Glass Corp. obtained a default judgment against SYSTEMS in the amount of $781,687.01 plus costs and interest, and entered that judgment on May 13, 2008. Def. SMF ¶ 32; Def. Ex. P.  On October 1, 2007 SYSTEMS assigned the then-remaining value of Plaintiff's judgment note to X-CORP ($16,861.97) and, in exchange, X-CORP assumed the obligations of servicing the existing pre-paid service agreements of

---

[5](...continued)
offered to discontinue the action on behalf of SYSTEMS because SYSTEMS was "for all intents and purposes, a defunct corporation and given that the monies paid to Mr. Ellis for which were are seeking recovery were paid by [PCGI], there is no longer a need to continue the action on behalf of [SYSTEMS]." Id.

Nevertheless, in a responsive letter dated August 15, 2008 (also supplied by Defendants), it appears that Ellis was an employee of SYSTEMS. Def. Ex. K.  In this letter, Ellis's attorney writes:

We are somewhat confused regarding your representation that [SYSTEMS] is defunct. [SYSTEMS] was actively pursuing its counterclaims and opposed our recent motion to dismiss.  Also, Mr. Paris testified that Dana Ellis was an employee of [SYSTEMS] at the preliminary injunction hearing (see page 4 of transcript).  In addition, based on Mr. Paris' testimony, it would seem that [SYSTEMS] was the real party on interest, if any, that was allegedly injured.

Id.

SYSTEMS' customers valued at $73,566.75 as well as paying certain of SYSTEMS'
accounts payable totaling $10,607.50. Def. SMF ¶ 24.  Plaintiff commenced this action on
February 11, 2008.   SYSTEMS filed its formal Certificate of Dissolution and received the
consent of the New York State Commissioner of Taxation and Finance for dissolution on
October 14, 2008. Def. SMF ¶ 35.  As indicated above, SYSTEMS has defaulted in this
action.

## III.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedures governs motions for summary
judgment. It is well settled that on a motion for summary judgment, the Court must
construe the evidence in the light most favorable to the non-moving party, see Tenenbaum
v. Williams, 193 F.3d 581, 593 (2d Cir.1999), and may grant summary judgment only
where "there is no genuine issue as to any material fact and . . . the moving party is
entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  An issue is genuine if the
relevant evidence is such that a reasonable jury could return a verdict for the nonmoving
party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202
(1986).  A party seeking summary judgment bears the burden of informing the court of the
basis for the motion and of identifying those portions of the record that the moving party
believes demonstrate the absence of a genuine issue of material fact as to a dispositive
issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265
(1986).  If the movant is able to establish a prima facie basis for summary judgment, the
burden of production shifts to the party opposing summary judgment who must produce
evidence establishing the existence of a factual dispute that a reasonable jury could
resolve in her favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587,

8

106 S. Ct. 1348, 89 L. Ed.2d 538 (1986).  A party opposing a properly supported motion

for summary judgment may not rest upon "mere allegations or denials" asserted in his

pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir.1994), or on

conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105,

114 (2d Cir.1998).

## IV.    DISCUSSION

### a.    Breach of Contract/Alter-Ego Liability

The First Cause of Action alleges a claim of breach of contract against PCGI and

SYSTEMS.  See Am. Compl. ¶¶ 58-62.  Defendants argue that there can be no contract

liability against PCGI because there was no privity, mutual assent, or consideration

tendered between Plaintiff and PCGI.[6]  Plaintiff counters that PCGI was the alter ego of

SYSTEMS and that, therefore, PCGI may be held accountable on the breach of contract

claim.

In New York,[7] a corporation that is a non-party to a contract may be held liable

under the contract if the plaintiff is able to pierce the corporate veil and show that the non-

party is the alter ego of a contracting party. See Consol. Risk Servs. v. Auto. Dealers WC

Self Ins. Trust, 2007 WL 951565, at * 4 (N.D.N.Y Mar. 27, 2007);  Ammcon, Inc. v. Kemp,

826 F. Supp. 639, 646 (E.D.N.Y. 1993).  However,  New York courts disregard corporate

---

[6]Defendants make the same argument with respect to X-CORP but the beach of contract cause of action is asserted only against SYSTEMS and PCGI.  Further, as Defendants point out in their memorandum, X-CORP did not exist at the time the contract was formed or executed. Accordingly, the breach of contract claim is addressed only as to PCGI.  Whether X-CORP will have liability on this, or the other, claims depends on the resolution of the successor liability theory, addressed in the text infra.

[7]None of the parties address choice of law, but all parties argue exclusively under New York law. The Court finds that, based upon the circumstances of the case, New York law applies.

form reluctantly, Gartner v. Snyder,  607 F.2d 582, 586 (2d Cir. 1979), and will

> impose alter-ego liability by disregarding formal corporate identities only
> when necessary to prevent fraud or to achieve equity. See @Wireless
> Enters., Inc. v. AI Consulting, LLC, No. 05-CV-6176, 2006 WL 3370696, *6
> (W.D.N.Y. Oct. 30, 2006). Courts pierce the corporate veil and find two
> corporations to be a single unit  "where one is so related to, or organized, or
> controlled by, the other as to be its instrumentality or alter ego." Rivera v.
> Citgo Petroleum Corp., 181 A.D.2d 818, 819, 583 N.Y.S.2d 159 (2d Dep't
> 1992) (quotation omitted).

 Consol. Risk Servs., 2007 WL 951565, at * 4; see Gartner, 607 F.2d at 586;[8] see also

John John, LLC v. Exit 63 Development, LLC,  35 A.D.3d 540, 541 (2d Dep't 2006).[9]

   "'Generally considered are such factors as whether there is an overlap in

ownership, officers, directors and personnel, inadequate capitalization, a commingling of

assets, or an absence of separate paraphernalia that are part of the corporate form . . .

such that one of the corporations is a mere instrumentality, agent and alter ego of the

other.'" John John, LLC, 35 A.D.3d at 541 (quoting Matter of Island Seafood Co. v. Golub

Corp., 303 A.D.2d 892, 893-894 (3rd Dep't 2003)).  Of course, alter ego arguments are

"fact-laden claim[s]" that are "particularly unsuited for resolution on summary judgment."

Forum Ins. Co. v. Texarkoma Transp. Co., 229 A.D.2d 341, 342 (1st Dep't 1996).

   Viewing the record in the light most favorable to Plaintiff, there is a basis to

conclude that Paris was the sole principal and owner of both SYSTEMS and PCGI; that

---

[8]("Because New York courts disregard corporate form reluctantly, they do so only when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation . . ., and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego .")

[9]("The corporate veil will be pierced to achieve equity, even absent fraud, 'when a corporation has been so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego.'") (quoting Austin Powder Co. v. McCullough, 216 A.D.2d 825, 827 3rd Dep't 1995)).

SYSTEMS and PCGI shared the same business location; that Paris entered a contract on behalf of SYSTEMS for the installation of an IT system for Plaintiff although SYSTEMS had no employees to perform the installation; that PCGI employees represented, either impliedly or expressly, that they were SYSTEMS' employees; that for several years PCGI employees worked on the installation project, and gave consulting advice to Plaintiff; and Plaintiff repeatedly paid additional sums of money to SYSTEMS in connection with the installation project based upon the faulty work performance of, and representations by, PCGI employees.  Further, there is a basis to conclude that PGCI and SYSTEMS shared personnel and had a untied interest in the enforcement of the proprietary rights of the two corporations. See e.g. fn. 5, *supra* ; see also Paris Consulting Group Intern., LLC v. Ellis, 17 Misc.3d 1124(A), 851 N.Y.S.2d 72 (Table), 2007 WL 3292918, at *1-*2 (N.Y. Sup. Nov. 2, 2007).[10]  Finally, based on the Corning Glass Corp. v. SYSTEMS litigation and the fact that SYSTEMS defaulted in the instant litigation, there is a basis for the inference that SYSTEMS has sought to insulate itself from its obligations on its contracts by operating two separate corporate entities that, in essence, acted as one.

Based on these facts, a reasonable fact finder could conclude that PCGI was the corporation that actually performed and benefitted from the Macola IT systems contract and the subsequent support agreements, and that SYSTEMS, the signatory to the contracts, was merely a shell corporation intended to limit PCGI's liability should a claim

---

[10]Based on the testimony presented at hearing for a preliminary injunction, the New York State Supreme Court found that "[i]n 1995, plaintiffs [Paris Consulting Group International, LLC and Xonitek Systems Corporation] hired defendant as director of business development." Paris, 2007 WL 3292918, at *1. The Paris decision further stated: "Plaintiffs presented the testimony of Joseph Paris, president, who alleged that defendant had improperly solicited one of plaintiffs' clients." Id. at *2.  The plural use of "plaintiff" was used repeatedly in the decision to describe the joint interest of Paris Consulting Group International, LLC and Xonitek Systems Corporation.

11

be made under the contracts.  Thus, a reasonable fact finder could conclude that PCGI

was the alter ego of SYSTEMS for purposes of imposing liability on the contract claims.

See Ledy v. Wilson, 38 A.D.3d 214, 215 (1st Dep't 2007).[11] Defendants' motion in this

regard is denied with leave to renew after the jury returns its verdict on the alter ego

theory.

> **b.     Negligent Misrepresentation**

The Second Cause of Action alleges a claim of negligent misrepresentation against

PCGI and SYSTEMS.  Am. Compl. ¶¶ 63-69.  Plaintiff asserts that PCGI "and/or"

SYSTEMS negligently misrepresented "its/their" ability to install and implement a fully

functioning Macola IT system fitting Plaintiff's business needs for a price not to exceed

$240,312.50, and that Plaintiff relied "upon the special representations of the said

defendants." Id.[12]  Defendants argue that the negligent misrepresentation claim against

PCGI must be dismissed because: (1) the dispute derives from a contract; (2) PCGI owed

no duty to Plaintiff; and (3) the facts do not support a legally viable negligent

misrepresentation claim.

Whether or not there is alter ego liability for PCGI on the Macola IT system

contract, the negligent misrepresentation claim against PCGI must be dismissed.

Under New York law, a tort cause of action generally does not lie where it is

_____

[11]( Counterclaimants "did raise material issues of fact as to whether plaintiffs were the alter egos of
the LLCs. Indeed, evidence was submitted that the corporate plaintiffs and the LLCs shared common officers
and directors, and their operations were located in the same offices. . . . Contrary to plaintiffs' contention, the
individual plaintiffs can be held personally liable for the LLCs' breach of contract if the officers took the
challenged actions on the LLCs' behalf and the breach involved bad-faith misrepresentations.")(citations
omitted).

[12]Although the Second Cause of Action is captioned as a "negligence and negligent
misrepresentation" claim, there are no allegations of negligence beyond those asserting that PCGI and
SYSTEMS "negligently misrepresented" certain facts relative to the Macola IT systems installation.

duplicative of a claim sounding in contract. See Maxus Leasing Group, Inc. v. Kobelco Am., Inc., No. 5:04-CV-518, 2007 WL 655779, *4 (N.D.N.Y. Feb. 26, 2007) (citation and footnote omitted).  However, an actionable tort may exist when the plaintiff asserts that the defendant breached a duty independent of the contract. See id. (citation and footnote omitted). The duty can be considered independent of the contract even if it arises out of the relationship that the contract created. See LaBarte v. Seneca Res. Corp., 285 A.D.2d 974, 976, 728 N.Y.S.2d 618 (4th Dep't 2001) (citations omitted). "'This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.'" Id. at 976-77, 728 N.Y.S.2d 618 (quotation omitted). Therefore, in a case where the plaintiff sufficiently pleads a duty beyond the scope of a contract, he can also maintain other tort claims. Cf. Sergeants Benevolent Assoc. Annuity Fund v. Renck, 19 A.D.3d 107, 111, 796 N.Y.S.2d 77 (1st Dep't 2005) ("Since we have concluded, however, that a claim for breach of fiduciary duty has been sufficiently pleaded, a duty on the part of the [defendants] beyond the scope of the agreement has been alleged and the negligence claim should be reinstated.").

Consol. Risk Serv., 2007 WL 951565, at *2.

Plaintiff has not plead or presented proof that PGCI or SYSTEMS misrepresented that either would perform a duty beyond the scope of the Macola IT system installation contract.  Rather, Plaintiff contends that alleged misrepresentations were *concerning* the implementation and installation of the Macola IT system for Plaintiff's business. See Am. Compl. ¶¶ 63-69.  Accordingly, if the jury concludes that PCGI is the alter ego of SYSTEMS and, therefore, a party to the Macola IT systems contract, the Second Cause of Action against PCGI must be dismissed.  See Levin v. Gallery 63 Antiques Corp., 2006 WL 2802008,  at * 19 (S.D.N.Y. Sept. 26, 2006);[13] Conocophillips v. 261 East Merrick Road Corp., 428 F. Supp.2d 111, 127 (E.D.N.Y.  2006);[14]  Topps Company, Inc. v.

---

[13] ("The causes of action for money had and received, promissory estoppel, unjust enrichment, and negligence are all quasi-contract claims and are therefore not viable, where, as here, it is undisputed that the parties entered into an express agreement that governs the dispute.")

[14] ("The existence of a valid and enforceable written contract governing a particular subject matter

(continued...)

13

Cadbury Stani S.A.I.C., 380 F. Supp.2d 250,  265 (S.D.N.Y. 2005);[15] see also[16] Romano v. MTI/The Image Group, Inc., 2003 WL 22203735, at * 3, n. 5 (S.D.N.Y. Sept. 22, 2003)(S.D.N.Y. Sept. 23, 2003);[17]  195 Lombardy Street, L.L.C. v. McCarthy, 2006 WL 3076563,  at * 4 (N.Y. Sup. Ct., Kings Cty, Jan. 4, 2006)(slip op.).[18]

Assuming that there is no alter ego liability, PCGI stands in the stead of a computer consultant subcontracted for, and arranged by, SYSTEMS.  Indeed, Plaintiff has alleged that it was unaware of the existence of PCGI at the time that it was dealing with the computer consultants that it thought were SYSTEMS' employees. Thus, Plaintiff cannot establish that it had the requisite "special relationship" with PCGI such to create a viable negligent misrepresentation claim.  See Fleet Bank v. Pine Knoll Corp., 290 A.D.2d 792, 736 N.Y.S.2d 737, 741 (3d Dep't 2002);[19] Stafkings Health Care Sys., Inc. v. Blue Cross &

---

[14](...continued)
ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.")(citations omitted)

[15]("New York courts clearly distinguish between a 'promissory statement as to what will be done in the future,' which gives rise only to a breach of contract claim, and a false 'representation of present fact,' which gives rise to a separable claim of fraudulent inducement.")(quoting Stewart v. Jackson & Nash, 976 F.2d 86, 89 (2d Cir. 1992) and citing Restatement (Second) of Contracts § 159, cmt. c. (1981))

[16]Defendant argues that the Second Cause of Action cannot be sustained even if considered as a fraud based claim.

[17]("[I]t is well settled under New York law that a cause of action for fraud cannot be sustained where the alleged fraud relates to a breach of contract.")

[18]("[P]laintiff's allegation that defendant fraudulently induced it to enter into the contract while never intending to sell the premises is simply a breach of contract claim.")

[19](To state a claim for negligent misrepresentation, a plaintiff must establish that: (1) the defendant "had a duty to use reasonable care to impart correct information due to a special relationship existing between the parties"; (2) the information provided by the defendant  was "incorrect or false"; and (3) the plaintiff "reasonably relied upon the information provided.")

Blue Shield, 221 A.D.2d 908, 635 N.Y.S.2d 387, 388 (4th Dep't 1995);[20] see also Nielsen

Media Research, Inc. v. Microsystems Software, Inc., 2002 WL 31175223, at *8  (S.D.N.Y.

Sept. 30, 2002).[21]

For the foregoing reasons, Defendants' motion for summary judgment seeking to

dismiss the Second Cause of Action alleging a negligent misrepresentation claim is

granted.

### c.    Unjust Enrichment

The Third Cause of Action alleges an unjust enrichment claim against PCGI and

SYSTEMS.  Am. Compl. ¶¶ 70-71.  Plaintiff asserts that defendants wrongfully benefitted

from Plaintiff's payments made "well in excess of any agreed price" for the Macola IT

system "from which [Plaintiff] it did not adequately receive any material benefit."  Id.  ¶ 71.

Defendants argue that the claim should be dismissed.

"The existence of a valid and enforceable written contract governing a particular

subject matter ordinarily precludes recovery in quasi contract for events arising out of the

same subject matter. . . .  A 'quasi contract' only applies in the absence of an express

agreement, and is not really a contract at all, but rather a legal obligation imposed in order

to prevent a party's unjust enrichment." Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70

---

[20](In order to "recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity.")

[21]To the extent the claim can be read as a negligence claim against PCGI, the claim is one alleging the tort of professional computer consultant malpractice.  However, "'the courts of [New York] do not recognize a cause of action for professional malpractice by computer consultants,'" Nielsen, 2002 WL 31175223, at *8 (quoting Richard A. Rosenblatt & Co. v. Davidge Data Sys. Corp., 295 A.D.2d 168, 743 N.Y.S.2d 471, 472 (1st Dep't 2002) and citing Columbus McKinnon Corp. v. China Semiconductor Co., 867 F. Supp. 1173, 1182 (W.D.N.Y.1994); RKB Enters. Inc v. Ernst & Young, 182 A.D.2d 971, 582 N.Y.S.2d 814, 816 (3d Dep't 1992)), and, therefore, the claim in this regard is dismissed.

N.Y.2d 382, 388 (1987). "It is impermissible . . . to seek damages in an action sounding in

quasi contract where the suing party has fully performed on a valid written agreement, the

existence of which is undisputed, and the scope of which clearly covers the dispute

between the parties." Id. at 389.

Although "an actionable tort may exist when the plaintiff asserts that the defendant

breached a duty independent of the contract,"  Consol. Risk Serv., 2007 WL 951565, at

*2, Plaintiff has not asserted sufficient facts to establish that any party breached a duty

independent of the Macola IT system contract.  In opposition to the motion, Plaintiff argues

that "defendants have breached extra-contractual duties, such as the breach of the

covenant or good faith and fair dealing."  Pl. Mem. L. p. 19.  However, the Fifth Cause of

Action, alleging a breach of the duty of the covenant of faith and fair dealing, is premised

on the contention that SYSTEMS breach this implied covenant in relation to the Macola IT

system contract.  Am. Compl., ¶¶ 80-84.   Thus, the "breach of the duty of the covenant of

faith and fair dealing" cause of action alleges only a breach of duties arising from the

contract, and does not form the basis of an independent duty that would support an unjust

enrichment claim.  See Samy and Irina, Inc. v. Berezentseva, 2009 WL 2462649, at * 7

(N.Y. Sup. Aug. 04, 2009)(dismissal of "breach of the covenant of good faith and fair

dealing" cause of action is warranted because it "is redundant and duplicative of plaintiffs'

breach of contract cause of action")(citations omitted).

While the evidence supports the proposition that PCGI employees encouraged

Plaintiff to enter into repeated service agreements, the agreements were between Plaintiff

and SYSTEMS and were for services related to the Macola IT system contract.  There is

no dispute that Plaintiff paid nothing directly to PCGI.  When viewing the facts in the light

most favorable to Plaintiff, the asserted facts establish only that PCGI, as either SYSTEMS' alter ego or its sub-contractor, breached the duties arising from the subject matter of the Macola IT systems contract.   Therefore, Plaintiff's unjust enrichment claim is dismissed.  See Consol. Risk Serv., 2007 WL 951565, at *7.[22]

### d.    Economic Duress

In the Fourth Cause of Action, Plaintiff asserts that SYSTEMS threatened to withhold "agreed upon technical support services" unless Plaintiff agreed to make additional payments "in excess of those specified in the Agreement."  Am. Compl. ¶ 75. Plaintiff further asserts that it was "faced with a serious economic difficult arising from the improper threat," id., and only agreed "[u]nder economic duress" to continue paying SYSTEMS "for technical support services because it did not have the economic means to avoid the serious economic difficulty" it believed would occur if the payments were stopped. Id. ¶ 77, 78.  It contends that it was damaged "as a result of the economic duress caused by" SYSTEMS.  Id. ¶ 79.  Defendants argue that "[t]o the extent that plaintiff posits any derivative or vicarious theory of liability for economic duress against PCGI or X-CORP, it would be precluded as a matter of law" because: (1) Plaintiff has not sufficiently established that its free will was overborne; and (2) Plaintiff did not promptly repudiate the contracts under which it paid SYSTEMS. Def. Mem. L. pp. 12-13.

> Under New York law, a contract may be voided on the ground of duress if the moving party proves it was involuntarily forced to enter the contract as a result of "a wrongful threat precluding the exercise of . . . free will." Warnaco, Inc. v. Farkas, 872 F.2d 539, 546 (2d Cir.1989), quoting Austin

---

[22] ("Under New York law, an enforceable contract between the parties concerning a particular subject matter precludes quasi-contractual recovery in unjust enrichment for claims arising out of that subject matter.")

Instrument, Inc. v. Loral Corp., 29 N.Y.2d 124, 130, 272 N.E.2d 533, 324 N.Y.S.2d 22 (1971); see also VKK Corp. v. National Football League, 244 F.3d 114, 122 (2d Cir. 2001), quoting DiRose v. PK Mgmt. Corp., 691 F.2d 628, 633 (2d Cir.1982), cert. denied, 461 U.S. 915, 103 S. Ct. 1896, 77 L .Ed.2d 285 (1983). "The doctrine of economic duress arises from the theory that 'the courts will not enforce an agreement in which one party has unjustly taken advantage of the economic necessities of another and thereby threatened to do an unlawful injury.'" VKK Corp., 244 F.3d at 122, quoting Scientific Holding Co. v. Plessey Inc., 510 F.2d 15, 22 (2d Cir.1974).

On the other hand, the cases are clear that invalidation of a contract on grounds of economic duress should take place only in "extreme and extraordinary cases." VKK Corp., 244 F.3d at 123.  Evidence of economic disadvantage is inadequate to make a case of duress; since "an element of economic duress is . . . present when many contracts are formed or releases given, the ability of a party to disown his obligations under a contract or release on that basis is reserved for extreme and extraordinary cases. Otherwise, the stronger party to a contract or release would routinely be at risk of having its rights under the contract or release challenged long after the instrument became effective." VKK Corp., 244 F.3d at 123.  Thus, it must be shown that the disadvantaged party was deprived of its free will and that the usual remedy of an action for rescission or for breach of contract would be inadequate to remedy the situation. Davis & Assocs. v. Health Mgmt. Servs., 168 F. Supp.2d 109, 114 (S.D.N.Y. 2001), quoting Berman v. Parco, 1996 WL 465749, at *7-8, 1996 U.S. Dist. Lexis 11921, *22, No. 96 Civ. 0375(KMW) (S.D.N.Y. August 15, 1996).  It is also "axiomatic" that parties cannot be guilty of economic duress "for failing to grant further forbearance when they had no legal duty to do so." Davis, 168 F. Supp.2d at 114.  Duress by its definition constitutes a wrongful act, and a wrongful act cannot ordinarily result from a party exercising its legal rights.

. . . [A] sophisticated party must support a claim for economic duress by more than the claim that the defendant knew of and used the plaintiff's poor financial condition to obtain an advantage in negotiations. Davis, 168 F. Supp.2d at 114, quoting DuFort v. Aetna Life Ins., 818 F. Supp. 578, 581 (S.D.N.Y.1993). . . .  "Although 'there is no line of absolute demarcation' between a threat that deprives a party of its free will as opposed to a threat that portends some lesser degree of harm, any 'finding of duress at least must reflect a conviction that one party to a transaction has been so improperly imposed upon by the other that a court should intervene.'" Davis, 168 F. Supp.2d at 116, quoting Hellenic Lines, Ltd. v. Louis Dreyfus Corp., 372 F.2d 753, 758 (2d Cir.1967).

In re Marketxt Holdings Corp., 361 B.R. 369, 400-01 (Bkrtcy. S.D.N.Y. 2007).

Plaintiff has not presented facts from which a reasonable fact finder could conclude that Plaintiff's will was overborne by SYSTEMS' wrongful action such to make out a viable claim of economic duress.  Indeed, there is no dispute that, at some point after it became apparent to Plaintiff that the Macola IT system was not functioning properly, Plaintiff contacted Exact Corp. and learned that there were other entities that could provide computer consultation on the Macola IT system.  Plaintiff chose to not to end its relationship with SYSTEMS because it "was indebted to SYSTEMS and relied on continued representations made by SYSTEMS/PCGI that they could properly implement the Macola IT System."  Pl. Facts at ¶19.  Such allegations of economic pressure are insufficient to support the contention that Plaintiff's free will was overborne by wrongful and oppressive conduct, and fail to support a viable claim of economic duress.  See In re Marketxt Holdings Corp., 361 B.R. at 401;[23] Playboy Enter. Int'l Inc. v. On Line Ent., Inc., 2004 WL 626807 at * 8 (E.D.N.Y.2004),[24] aff'd, 135 Fed. Appx. 479 (2d Cir. 2005); Shain v. Center for Jewish History, Inc., 2006 WL 3549318, at *5 (S.D.N.Y. Dec. 7, 2006).[25]

Furthermore,

"'a person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so.' " VKK Corp., 244 F.3d at 122, quoting DiRose, 691 F.2d at 633-34; see also Scientific Holding Co., 510 F.2d at 23; International Halliwell Mines, Ltd. v. Continental

---

[23] (dismissing the claim because, inter alia, "[t]here is no allegation that the Debtor was placed in such a dire situation as to be precluded from exercising its free will.")

[24] ("Duress may not be found merely from the existence of a difficult bargaining position or the pressure of financial circumstances. To succeed on a theory that an agreement was procured by duress, a plaintiff must show that he was compelled to agree to its terms by way of wrongful and oppressive conduct that precluded the plaintiff from the exercise of his own free will.") Playboy, 2004 WL 626807 at * 8 (quoting McIntosh v. Consol. Edison Co., 1999 WL 151102 (S.D.N.Y.1999), aff'd, 2001 WL 1669111 (2d Cir. 2000)).

[25] ("[T]he law is clear that the mere inability to pay one's bills is not enough to demonstrate a lack of a practical alternative to signing" a contract and does not establish a legal element of a claim of duress)

Copper and Steel Indus., Inc., 544 F.2d 105, 108 (2d Cir.1976).  A delay of
six months has been found to constitute a forfeiture. See DiRose, 691 F.2d
at 634. A failure to promptly repudiate a contract entered into under duress
will be deemed a ratification of that contract. VKK Corp., 244 F.3d at 122-23.
Ratification can also occur through "'intentionally accepting benefits under
the contract,' by 'remaining silent or acquiescing in the contract for a period
of time after he has the opportunity to avoid it,' or by 'acting upon it,
performing under it, or affirmatively acknowledging it.'" VKK Corp., 244 F.3d
at 123, quoting In re Boston Shipyard Corp., 886 F.2d 451, 455 (1st Cir.
1989).

In re Marketxt Holdings Corp., 361 B.R. at 402.

Although Plaintiff complained to SYSTEMS and threatened to file a lawsuit in 2005,

it did not promptly repudiate the contracts.  Instead, Plaintiff ratified the contracts by

entering a promissory note and a judgment note (the later of which contained a confession

of judgment), and by paying the full amount of the contracts before starting this action.[26]

Despite that "repudiation will be considered timely when a victim of continual duress waits

for such duress to end before repudiating the agreements," In re Marketxt Holdings Corp.,

361 B.R. at 402 (citation omitted), there is no evidence that the alleged duress - i.e.

pressure to enter computer support agreements each year - continued until Plaintiff sought

to repudiate the contracts or that it prevented Plaintiff from repudiating sooner.

Accordingly, Defendants' motion for summary judgment seeking to dismiss the

economic duress claim is granted.

### f.    Fraudulent Conveyance

In the Sixth Cause of Action Plaintiff asserts that SYSTEMS' assignment of its

assets to X-CORP on October 1, 2007 constituted a fraudulent conveyance.  See Am.

---

[26]Plaintiff's final payment in the string of payments that is the basis for the duress claim occurred in
2007.  This action was filed in February of 2008.

Compl. ¶¶ 85-97.  Defendants argue that the claim must be dismissed because Plaintiff

was not SYSTEMS' creditor at the time of the conveyance, and because the conveyance

was supported by valid consideration.

Although some provisions of New York's Uniform Fraudulent Conveyance Act

("UFCA"), N.Y. Debt. & Cred. Law  §§ 270-281, apply only to transfers affecting current

creditors, see e.g. N.Y. Deb. Cred. L. § 273,[27] some sections of the UFCA apply to future

creditors.  For example, Section 276 provides in pertinent part:

> Every conveyance made . . .  with actual intent, as distinguished from intent
> presumed in law, to hinder, delay, or defraud either present or future
> creditors, is fraudulent as to both present and future creditors.

N.Y. Debt. Cred. Law § 276.

Thus, the fact that Plaintiff was not a creditor at the time of the challenged

conveyance does not prevent a claim under Section 276.

Further, Section 276 does not require that the challenged conveyance lacked fair

consideration. Rather, Section 276 focuses on the intent of the transferor in making the

transfer.

> A party seeking to set aside a fraudulent conveyance under [N.Y. Debt.
> Cred. Law ] Section 276 must plead an actual intent to defraud with
> particularity sufficient to meet the heightened standard of Rule 9(b). See
> Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 315
> (S.D.N.Y.1999).  Nevertheless, because direct proof of fraudulent intent is
> usually difficult to obtain, such intent may be inferred from circumstantial
> evidence, or "badges of fraud." Id. This evidence may consist of (1) the
> inadequacy of consideration received in the allegedly fraudulent conveyance,
> (2) the close relationship between parties to the transfer, (3) information that
> the transferor was rendered insolvent by the conveyance, (4) suspicious
> timing of transactions or existence of a pattern after the debt had been

---

[27] ("Every conveyance made . . .  by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made . . .  without a fair consideration.")(emphasis added).

incurred or a legal action against the debtor had been threatened, or (5) the use of fictitious parties. <u>See Stratton Oakmont</u>, 234 B.R. at 315-16 (citing <u>In re Kaiser</u>, 722 F.2d 1574, 1582-83 (2d Cir.1983)); <u>In re Kovler</u>, 249 B.R. 238, 244-45 (S.D.N.Y.2000).

<u>Royal Palm Senior Investors, LLC v. Carbon Capital II</u>,  2009 WL 1941862, at *6 (S.D.N.Y. July 07, 2009).

Plaintiff has plead, and presented facts to support, a *prima facie* case of a fraudulent conveyance of SYSTEMS' assets to X-CORP.  The transfer of assets to X-CORP effectively rendered SYSTEMS insolvent.  At the time of the transfer of assets, SYSTEMS had a default judgment against it from the Corning Glass Corp. in the amount of $781,687.01 plus costs and interest.   Based upon evidence of Plaintiff's on-going complaints related to the Macola IT system, a reasonable fact finder could conclude that SYSTEMS' was aware, or should have been aware, that Plaintiff could commence a civil action and become one of its future creditors similar to Corning Glass.  Based upon the identical ownership and location of SYSTEMS and X-CORP; the similar business purpose; the limited consideration for the transfer; and the suspicious timing of the formation of X-CORP and the transfer of assets in relation to the Corning Glass lawsuit and the potential for a civil action by Plaintiff, a reasonable fact finder could conclude that the transfer of assets was made "with actual intent . . . to hinder, delay, or defraud . . . future creditors." N.Y. Debt. Cred. Law § 276.   Accordingly, Defendants' motion to dismiss this claim is denied.

### g.   Successor Liability

In the Seventh Cause of Action, Plaintiff asserts that X-CORP is the successor corporation to SYSTEMS and, therefore, should be held responsible for SYSTEMS'

22

liabilities to Plaintiff. Am. Compl. ¶¶ 98-114.  Defendants argue that the claim should be dismissed because Plaintiff has failed to present facts sufficient to support a finding of successor liability.

The traditional rule in New York is that a purchaser of corporate assets does not assume the seller's liabilities.  See Cargo Partner A.G. v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003).  However, an exception to this rule applies "to: (1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who de facto merged with a seller; and (4) a buyer that is a mere continuation of a seller." Id. (citing Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 245 (1983);  10 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 4880 (2002)); see also Semenetz v. Sherling & Walden, Inc., 7 N.Y.3d 194, 198 (2006);[28]  A.J. Heel Stone, L.L.C. v. Evisu Intern., S.R.L., 2006 WL 1458292, at *4 (S.D.N.Y. May 25, 2006).[29]  Plaintiff contends that, under the facts presented, a fact finder could conclude that the 2nd, 3rd, and 4th exceptions apply.

Because there may have been a fraudulent conveyance of SYSTEMS' assets to X-CORP, the second exception could apply. Therefore, the motion should be denied on this

---

[28] ("'[W]hile, in general, a corporation which acquires the assets of another is not liable for the torts of the predecessor corporation, there [are] exceptions to the rule.' These exceptions arise where a successor corporation 'expressly or impliedly assume[s] [its] predecessor's tort liability'; or 'there [is] a consolidation or merger of seller and purchaser'; or 'the purchasing corporation [is] a mere continuation of the selling corporation'; or 'the transaction is entered into fraudulently to escape such obligations.')(quoting).

[29] ("Successor liability is assumed if: '(1) the buyer expressly or impliedly assumed the seller's tort liability, (2) there was a consolidation or de facto merger of seller and buyer, (3) the buyer was a mere continuation of the seller, or (4) the transfer was entered into fraudulently to escape such liability.'")(quoting Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P., 392 F. Supp.2d 621, 627 (S.D.N.Y.2005)).

basis alone.  See A.J. Heel Stone, 2006 WL 1458292, at *4.[30]

Further, sufficient facts exists from which a reasonable fact finder could conclude that the 3rd and 4th exceptions also apply.  "[A] de factor merger occurs when a transaction, although not in form a merger, is in substance a consolidation or merger."  Cargo Partner, 352 F.3d at 46.

> To determine whether a "de facto merger" or "mere continuation" of the predecessor's business has occurred, courts consider 1) continuity of ownership; 2) cessation of ordinary business by the predecessor; 3) assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business; and 4) continuity of management, personnel, physical location, assets, and general business operation."  These factors are analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, "it was the intent of [the successor] to absorb and continue the operation of the [predecessor].

Nettis v. Levitt, 241 F.3d 186, 193-194 (2d Cir. 2001) (brackets in original) (citations omitted), overruled on other grounds, Slayton v. American Exp. Co., 460 F.3d 215 (2d Cir. 2006).

A continuity of ownership is present between SYSTEMS and  X-CORP, as is a continuity of management, personnel, and physical location. While Defendants argue that X-CORP was not formed as a continuation of SYSTEMS but rather to address another aspect of the "tech market," a reasonable fact finder could conclude that the two corporations did essentially the same work and provided the same services.  There is no dispute that  X-CORP took over servicing SYSTEMS' contracts and paying SYSTEMS' financial obligations, and it could be concluded that there was a continuity of general business operations between the two corporations.  Looking at the factors in totality, a

---

[30]("Because the Court has found that Petitioner has adequately pled fraudulent conveyance, Respondents' Motion to Dismiss the Successor Liability claim is DENIED.")

reasonable fact finder could conclude that it was the intent of X-CORP  to absorb and continue the operation of SYSTEMS, and that, therefore, either a de factor merger of the two occurred or that X-CORP was a continuation of SYSTEMS under a different name. This is sufficient to impose successor liability on X-CORP for SYSTEMS' liabilities. Consequently, Defendants' motion for summary judgment on the issue of successor liability is denied.

## V.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [dkt. # 27] is **GRANTED IN PART AND DENIED IN PART.**

The motion is granted as to the following claims, which are **DISMISSED**:

(1) The Second Cause of Action alleging a claim of negligent misrepresentation;

(2) That Third Cause of Action alleging a claim of unjust enrichment;

(3) The Fourth Cause of Action alleging a claim of economic duress.

The motion is denied in all other respects.

**IT IS SO ORDERED**

DATED:  August 31, 2009

Thomas J. McAvoy
Senior, U.S. District Judge

25